■ In the Matter of JOHN F. KILCHER, Appellant-Respondent, v LORRAINE KNOLL, Respondent-Appellant. (Proceeding No. 1.) In the Matter of LORRAINE KNOLL, Appellant, v JOHN F. KILCHER, Respondent. (Proceeding No. 2.)—Main J. Cross appeals, in proceeding No. 1, from an order of the Family Court of Albany County (Cheeseman, J.), entered September 21, 1984, which, *inter alia,* denied John F. Kilcher's application for support of the parties' son and directed Lorraine Knoll to pay $27.50 per week for support of the parties' daughter.

Appeal, in proceeding No. 2, from an order of the Family Court of Albany County (Cheeseman, J.), entered February 21, 1985, which, *inter alia,* dismissed Lorraine Knoll's orders to show cause to hold John F. Kilcher in contempt, to set aside a stipulation made in open court and to relieve her of support obligations for the parties' daughter.

The facts underlying these proceedings are set forth in a prior decision of this court, which remitted the matter to Family Court for consideration of the merits of John F. Kilcher's (hereinafter the father) petition for child support (100 AD2d 686). The parties then agreed to have the matter determined by Family Court on the previous record. Family Court determined that no modification of support for the parties' son Stephen was warranted, but that the change in the custodial arrangement of the parties' daughter Stephanie was a sufficient change in circumstances to warrant a modification of the parties' support obligations vis-à-vis Stephanie. Concluding that Stephanie's weekly needs were $50 and that Lorraine Knoll's (hereinafter the mother) net income was 55% of the parties' combined net income, Family Court ordered the mother to pay $27.50 per week in support of Stephanie, the award to date back to the May 21, 1983 date of the petition. The mother was, therefore, obligated to pay $1,815, which was offset by $1,685 in arrearages owed by the father pursuant to the 1979 stipulation which we have previously countenanced (100 AD2d 686, *supra*). Thus, the mother owed $130 plus the weekly payments of $27.50. From the order entered thereon, the parties cross-appeal in proceeding No. 1.

The mother then brought an order to show cause seeking an order holding the father in contempt for failure to pay arrearages pursuant to the 1979 stipulation and 1983 court order. She further petitioned Family Court to award her visitation or custody. She also sought, by another order to show cause, to have the 1979 stipulation set aside on the basis of the father's alleged willful noncompliance, the arrearages deducted from the father's income, the father fined and held in contempt, and counsel fees awarded. By still another order to show cause, the mother sought to stay the prior Family Court order directing her to pay $27.50 per week in child support and determining the retroactive amount of child support owed to be $1,815 pending determination of the order to show cause to set aside the 1979 stipulation.

Family Court, *inter alia,* dismissed the orders to show cause to set aside the 1979 stipulation and to hold the father in contempt; directed the mother to abide by its earlier decision concerning child support in the amount of $27.50 per week plus a net of $130 for retroactive child support; and awarded the mother visitation with which Family Court concluded the father had not been interfering, although he was encouraged to foster future visitation by the children. From the order entered thereon, the mother appeals in proceeding No. 2. Because the appeals raise issues which are somewhat intertwined, we shall consider the issues without specific reference to the respective orders, but our review is, of course, limited to the respective record in each proceeding.

Initially, we find no fault with Family Court's dismissal of the father's petition for child support for Stephen. Inasmuch as the father's petition for increased child support was predicated upon Stephen's right to adequate support, it was necessary for the father to demonstrate a change of circumstances warranting an upward modification (*Matter of Brescia v Fitts,* 56 NY2d 132, 140; *Matter of La Blanc v La Blanc,* 96 AD2d 670). The father agreed to proceed on the record developed prior to the earlier appeal and this record is almost barren of any evidence concerning a change in Stephen's needs and the father's ability to support him. On this record, Family Court properly dismissed the petition seeking child support for Stephen.

We next conclude that Family Court properly determined that the mother was obligated to pay child support of $27.50 per week for Stephanie. Of course, both parents are obligated to support their children according to the child's needs and the respective parent's means to provide (Family Ct Act

§ 413). The father testified that Stephanie's presence in his household increased his food expenses by $35 to $40 per week and necessitated other expenditures for such items as clothing, transportation and medical care. In view of this evidence, Family Court's finding that Stephanie's needs were $50 per week was supported in the record. Financial disclosure affidavits reveal that the mother's net income of $15,694 ($301.81 per week) was 58% of the parties' combined income, while the father's net income of $11,326 ($217.80) per week constituted 42% of the combined income. Thus, Family Court's determination that the mother should be responsible for 55% of Stephanie's needs, or $27.50 per week, finds support in the record and should be upheld.*

The mother contends that Stephanie abandoned her and that the father denied her visitation and that, accordingly, she should not be obligated to provide support for Stephanie. We previously indicated that the record failed to establish an abandonment of the mother's custody by Stephanie (100 AD2d 686, 687, *supra*) and the additional facts raised in proceeding No. 2 do not cause us to alter our earlier determination. Furthermore, Family Court could correctly determine that the father did not interfere with the mother's visitation rights. For example, the transcripts of telephone conversations prepared and submitted by the mother merely reflect self-serving characterizations of her perceived relationship with the children and the father. To the contrary is the report of the children's Law Guardian, which indicates that the father, at best, encouraged visitation and, at worst, did not inhibit it. The facts presented fall far short of showing that the father interfered with visitation to the extent necessary to relieve the mother of her support obligations (*cf. Adams v Adams,* 92 AD2d 644).

Finally, we cannot fault Family Court for dismissing the mother's order to show cause to set aside the 1979 stipulation as to the father's arrears in child support payments. Although we cannot condone the father's unilateral decision to cease making payments pursuant to the 1979 stipulation without obtaining an order from the court, we believe that Family Court fashioned an appropriate remedy by offsetting the father's unpaid arrearages against the mother's retroactive

---

* The downward adjustment of the mother's share from 58% to 55% was justified in light of the testimony, ambiguous and incomplete though it might have been, to the effect that the father did have some other, apparently limited, sources of income which were not disclosed on the financial disclosure affidavit.

support obligation (*cf. supra*). Accordingly, we find no reason to intervene in this matter.

Orders affirmed, without costs. Kane, J. P., Main, Mikoll, Yesawich, Jr., and Harvey, JJ., concur.